IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WALMART INC.,                    *
                                 *
        Plaintiff,               *
                                 *
     v.                          *        CV 623-040
                                 *
JEAN KING, in her official       *
capacity as Chief Judge of the   *
Office of the Chief              *
Administrative Hearing           *
Officer, et al.,                 *
                                 *
        Defendants.              *
                                 *

_____

O R D E R

_____

Presently pending before the Court is Plaintiff's motion for preliminary injunction. (Doc. 7.) The Parties agreed the Court can move forward with analyzing the motion for preliminary injunction and Defendants' response thereto as cross-motions for summary judgment. (Doc. 28, at 1.) For the following reasons, Plaintiff's motion for summary judgment is **GRANTED** and Defendants' motion for summary judgment is **DENIED**.

## I. BACKGROUND

On June 16, 2023, Plaintiff filed its Complaint against Defendants, seeking "to stop administrative proceedings in a federal agency that are being conducted by an administrative law judge [("ALJ")] who is unconstitutionally shielded from the President's supervision." (Doc. 1, at 2.) The Department of

Justice's ("DOJ") Office of the Chief Administrative Hearing Officer ("OCAHO") is determining whether to impose civil penalties against Plaintiff for alleged violations of immigration-related recordkeeping requirements (the "Underlying ALJ Proceedings"). (Id.) Chief ALJ Jean King, a Defendant, presides over the Underlying ALJ Proceedings and "is an executive officer whom the Attorney General may not remove except 'for good cause as establish and determined by the Merit Systems Protection Board [("MSPB")].'" (Id. (quoting 5 U.S.C. § 7521).) Plaintiff alleges that under Supreme Court precedent, this scheme violates the Constitution. (Id.) Plaintiff asserts that OCAHO ALJs are unconstitutionally insulated from presidential control by two levels of removal protection. (Id. at 3.) Plaintiff believes the remedy for this unconstitutional scheme is to enjoin the Underlying ALJ Proceedings and declare them unlawful. (Id.)

The same day Plaintiff filed its Complaint, it moved for a preliminary injunction, asking the Court to enjoin Defendants from proceeding with the Underlying ALJ Proceedings. (Doc. 7.) Defendants filed a response in opposition (Doc. 18), Plaintiff filed a reply brief (Doc. 20), and Defendants filed a sur-reply (Doc. 24). On August 28, 2023, the Court conducted a hearing and heard argument from both sides on the preliminary injunction. (Doc. 27.) Based on this, the motion has been fully briefed and is ripe for the Court's review. After discussion during the August 28, 2023 hearing, the Parties agreed to allow the Court to treat

Plaintiff's motion for preliminary injunction as a motion for summary judgment, and to construe Defendants' response to the motion for preliminary injunction as a cross-motion for summary judgment. (Doc. 28, at 1.) Based on the following, the Court **GRANTS** summary judgment in favor of Plaintiff, and issues a permanent injunction enjoining the Underlying ALJ Proceedings pending against Walmart.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted). The Court must view factual disputes in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). However, the nonmoving party "must

do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)).

That this matter comes before the Court on cross motions for summary judgment does not alter the Court's standard of review, "but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Accordingly, each motion must be considered "on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Id. As the Eleventh Circuit has held:

> Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to

> judgment as a matter of law on facts that are not genuinely disputed. . . . Nonetheless, cross-motions may be probative of the non-existence of a factual dispute when [ ] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.

United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (quoting Bricklayers Int'l Union, Loc. 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)).

## III. DISCUSSION

Article II grants the President the executive power of the government, "including the power of appointment and removal of executive officers - a conclusion confirmed by his obligation to take care that the laws be faithfully executed." Myers v. United States, 272 U.S. 52, 163-64 (1926). The President must have removal power "to keep [executive] officers accountable," as well as to promote democratic accountability so that the public can "pass judgment on the [President's] efforts." Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 483, 498 (2010). Without that power, the President cannot "take care that the laws be faithfully executed." Myers, 272 U.S. at 164. Because the President's officers must remain accountable to him, the power to appoint inevitably includes the contrary power to remove. Free Enter. Fund, 561 U.S. at 483. If the President could not remove his officers, then "a subordinate could ignore the President's supervision and direction without fear, and the President could do

nothing about it." PHH Corp. v. CFPB, 881 F.3d 75, 168 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) (citation omitted).

The President's removal power is not absolute. There are two narrow exceptions to Article II's requirement of unrestricted removal. Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2192 (2020). First, certain principal officers, whose direct supervisor is the President; and second, certain inferior officers, who are "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." United States v. Arthrex, Inc., 141 S. Ct. 1970, 1980 (2021) (citation omitted). "These two exceptions . . . represent what up to now have been the outermost constitutional limits of permissible congressional restrictions on the President's removal power." Seila Law, 140 S. Ct. at 2200 (citation and quotation marks omitted).

Plaintiff argues OCAHO's ALJs are officers that fit neither exception to unrestricted removal under Article II, so the removal scheme that protects them is unconstitutional twice over.  (Doc. 7, at 10.)  Defendants argue that since the ALJs are inferior officers, "there is no specific constitutional impediment to congressionally imposed restrictions on the President's removal powers." (Id. (quoting Morrison v. Olson, 487 U.S. 654, 689 n.27 (1988)).)  Plaintiff disputes this characterization, arguing unlike in Morrison, the two levels of good-cause removal

restrictions in place for OCAHO ALJs obstruct the President's control of them. (Doc. 7, at 11.)  The Court agrees with Plaintiff.

The Parties do not dispute OCAHO ALJs are "inferior officers" under Article II. (Doc. 18, at 10.)  ALJs may generally be removed "by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB]." 5 U.S.C. § 7521(a). In turn, members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).  This statutory scheme creates a multilevel protection from removal, which "is contrary to Article II's vesting of the executive power in the President." Free Enter. Fund, 561 U.S. at 484.   Congress cannot "commit[] substantial executive authority to officers" who are shielded by "two layers of for-cause removal" protection. Id. at 505.   Such double insulation "not only protects [the officer] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists" in the first place. Id. at 495.   This sort of "diffusion of accountability" is precisely what the Framers sought to prevent. Id. at 497; see Seila Law, 140 S. Ct. at 2203.

Defendants argue Congress can lawfully restrict the President's ability to remove OCAHO ALJs because they only perform adjudicatory functions. (Doc. 18, at 11.)  They argue these ALJs cannot initiate investigations, bring enforcement actions, or enact rules or regulations, so they do not have "substantial executive authority" like the Public Accounting Oversight Board

("PCAOB") in <u>Free Enter. Fund</u>.   (<u>Id.</u> at 11, 15.)   Plaintiff contends this is a mischaracterization of the OCAHO ALJs because they "exercise sweeping investigatory and enforcement powers over private parties engaged in adversarial adjudications," "determine, on a case-by-case basis, the policy of an executive branch agency," "establish DOJ policy through case-by-case construction of federal immigration laws, impose civil penalties on private parties, and wield broad supervisory authority in a manner akin to a federal district judge."   (Doc. 7, at 12; Doc. 20, at 11.)

While the Court recognizes the distinction Defendants try to draw between ALJs and other groups like the PCAOB, the issues with the OCAHO ALJs' authority cannot be overlooked.   ALJs assess fines, penalties, and even forfeitures against private parties on behalf of the government.   And they are doing so without supervision as required by Article II.   As relevant here, the OCAHO ALJs are determining whether to impose civil penalties against Plaintiff for alleged violations of immigration-related recordkeeping requirements.   (Doc. 7, at 3.)   Thus, the OCAHO ALJs are carrying out a function of the government, specifically Immigration and Customs Enforcement ("ICE"), to determine the validity of ICE's charges against Plaintiff.   (Doc. 1, at 5.)   Not only is this an adjudicatory function, but they can also assess fines and penalties based on their findings, and they are carrying out executive power by enforcing federal law.   See <u>City of Arlington v. F.C.C.</u>, 569 U.S. 290, 304 n.4 (2013) (holding that even when executive officers

"conduct adjudications," the activities are "exercises of . . . the executive [p]ower"); see also Lucia v. S.E.C., 585 U.S. 237, 241 (2018) (holding that ALJ adjudication is "one way" an agency can enforce the nation's laws). Just because Free Enter. Fund specifically examined an "inferior officer [who] determines the policy and enforces the laws of the United States," that did not limit its practical effect. 561 U.S. at 484. This is especially true in light of the fact the PCAOB did in fact carry out adjudicative functions as well. Id. at 530-31.

Ultimately, the Court finds the multilevel protection from removal present for the OCAHO ALJs is contrary to Article II, and contrary to the executive power of the President. The current statutory scheme unconstitutionally "subverts the President's ability to ensure that the laws are faithfully executed - as well as the public's ability to pass judgment on his efforts." Id. at 498. It is therefore "incompatible with the Constitution's separation of powers" and cannot stand. Id. Congress cannot force parties, such as Plaintiff, to have their legal rights adjudicated by inferior officers that carry out the President's executive power without oversight. Thus, the Court **GRANTS** summary judgment to Plaintiff and finds the DOJ's OCAHO ALJs are unconstitutionally doubly insulated from removal by the President. Defendants' cross-motion for summary judgment is therefore **DENIED**. The Court now turns to whether a permanent injunction is an appropriate remedy for this unconstitutional structure.

To obtain a permanent injunction, the party must show "(1) it has suffered irreparable harm; (2) remedies at law will not provide adequate compensation for the injury; (3) on balance, an equitable remedy is warranted; and (4) a permanent injunction will not disserve the public interest." W. Va. by & through Morrisey v. U.S. Dep't of the Treasury, 59 F.4th 1124, 1148 (11th Cir. 2023) (citation omitted). While the Parties' originally framed arguments for a preliminary injunction, the Court uses the arguments in its analysis. "The district court can exercise 'a range of choice' when deciding whether to grant a permanent injunction, so long as it does not misapply legal standards or rely on clearly erroneous facts." Id. (citation omitted).

As to the first element, the Court found, in granting Plaintiff summary judgment, that Plaintiff prevailed in establishing the violation of a constitutional right by having to take part in administrative proceedings conducted by an ALJ that is unconstitutionally shielded from the President's supervision. As a result, Plaintiff is suffering an irreparable harm because it is being exposed to an unconstitutional adjudication. Defendants argued this was not an irreparable injury sufficient to establish emergency relief, but now that the harm has been confirmed, this argument is less persuasive. (Doc. 18, at 7.) As the Supreme Court explained in Axon Enter., Inc. v. F.T.C., being subjected to illegitimate proceedings, led by an illegitimate decisionmaker, is a "here-and-now" injury and impossible to remedy once the

proceeding is over.  598 U.S. 175, 191 (2023) (quoting Seila Law, 140 S. Ct. at 2196).  Thus, the first element is satisfied.

As to elements two and three, the Court heard argument from both sides on a potential remedy if it found the OCAHO ALJs to be unconstitutional.  Both sides touched on the possibility of severability, and how a severed statute would function, or whether it would match Congress's intent.  The Supreme Court's "presumption of severability supplies a workable solution – one that allows courts to avoid judicial policymaking or de facto judicial legislation in determining just how much of the remainder of a statute should be invalidated."  Barr v. Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2351 (2020).  That said, the Court finds severability is not the proper solution here.  In line with Barr, the Court focuses on the Judiciary's confined role in the separation of powers.  Id.  The Court seeks a solution that "manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law."  Id.  In line with this principle, the Court finds the best solution is a permanent injunction instead of severability.  Rather than interfering with Congress's legislative role by trying to re-work the statutes in place, the Court finds on balance, an equitable remedy is more favorable.  With this solution, the unconstitutional actions are stopped for Walmart, and Congress is left with the ability to remedy the problem as it pleases.

Finally, as to element four, the Court finds a permanent injunction will not disserve the public interest. As outlined above, enjoining the unconstitutional adjudication that is taking place preserves the President's Article II power and ensures that officers are held accountable to the President. Thus, all four elements weight in favor of granting a permanent injunction.

As such, the Court finds Defendants are **PERMANENTLY ENJOINED** from directly or indirectly continuing the Underlying ALJ Proceedings conducted by the DOJ's OCAHO to determine whether to impose civil penalties against Walmart for alleged violations of immigration-related recordkeeping requirements. The Court shall retain jurisdiction of the Parties for the purpose of any proceedings to enforce the Permanent Injunction.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motion for preliminary injunction, construed as a motion for summary judgment (Doc. 7) is **GRANTED** and Defendants' motion for summary judgment (Doc. 18) is **DENIED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff under the terms of the Permanent Injunction, **TERMINATE** any remaining motions and deadlines, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of March, 2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

13